BRETT N. ANDERSON (11809)
BLACKBURN & STOLL, LC
257 East 200 South, Suite 800
Salt Lake City, Utah 84111
Telephone:    (801) 521-7900
Fax:          (801) 521-7965
E-mail:       bretta@blackburn-stoll.com

*Attorneys for Plaintiff, NGM Insurance Company*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| NGM INSURANCE COMPANY, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | COMPLAINT FOR DECLARATORY RELIEF |
| v. | ) ) | |
| RC MANAGEMENT, LLC d/b/a BACKYARD GREENS LLC, CECIL D. READ, ELIJAH BRUNSON, | ) ) ) ) | Case No.  Judge: |
| Defendants. | ) | |

Plaintiff, NGM Insurance Company ("NGM"), by and through its counsel, and pursuant to 28 U.S.C §2201(a) and Rule 57 of the Federal Rules of Civil Procedure, complains and alleges against Defendants as follows:

### PARTIES, JURISDICTION AND VENUE

1. NGM is an insurance company incorporated in Florida with its principal place of business located in Jacksonville, Florida.

2. Defendant RC Management, LLC d/b/a Backyard Greens LLC (hereinafter "Backyard Greens") is a Utah limited liability company with its principal office located at 367 W. 700 N., Orem, Utah 84057.

3. Defendant Cecil D. Read ("Read") is a Utah citizen who resides in and is domiciled

in Salt Lake County Utah.

4. Elijah Brunson ("Brunson") is an individual who resides in and is domiciled in Cache County, Utah.

5. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1332(a)(1), 2201 and 2202, insofar as this action seeks declaratory judgment, there exists diversity of citizenship between NGM and the other defendants, and the matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.

6. Venue is proper with this Court pursuant to 28 U.S.C. §1391(b)(1) and (2) because the business entity defendant has its their principal office in this District and this action seeks declaratory judgment concerning an insurance contract issued and delivered in Utah, and which contract is to be interpreted under Utah law.

## ENVYSCAPES LAWSUIT

7. On or about January 4, 2020, Envyscapes Inc. filed a complaint against Brunson, Read, and Backyard Greens in the Fourth Judicial District Court of Utah County, State of Utah, Case No. 210400003 (hereinafter "Envyscapes Suit", attached as Exhibit 1).

8. The case is designated as a Tier III case.

9. Under Utah R. Civ. P. 26 (c)(5), Tier III cases involves controversies in excess of $300,000 in alleged damages.

10. In the Envyscapes Suit, Envyscapes alleges the following:

   a. Envyscapes Inc. designs and installs residential and commercial golf greens.

   b. Preston Moon ("Moon"), the owner of Envyscapes, designed methods, formulas, and patterns relating to the design and construction of the greens, which give Envyscapes

    a competitive advantage. These alleged trade secrets relate to the installation, finishing methods, bunkers, infill, and seaming of the greens.

c. Envyscapes hired Brunson on March 8, 2019.

d. Brunson executed a Confidentiality and Non-Disclosure Agreement ("Confidentiality Agreement") on the day he was hired.

e. Per the Confidentiality Agreement, Brunson agreed not to "copy, duplicate, replicate, reproduce, reverse engineer, scope or otherwise attempt to recreate in any form" any of Envyscapes' confidential information.

f. As alleged in the complaint, "Confidential Information" was defined as, among other things, "information or material that is (a) developed, compiled, generated or created by or for [Envyscapes] ... (b) described verbally as confidential ... (c) the type of information that an ordinary business person would reasonably believe to be proprietary or confidential information" which includes, but is not limited to, Envyscapes' trade secrets as to formulas, patterns, methods, techniques and processes as to indoor installation, finishing methods, bunkers, infill and seaming of synthetic grass.

g. Envyscapes disclosed its trade secrets to Brunson regarding the installation, finishing methods, bunkers, infill and seaming techniques, the very things that give Envyscapes "its competitive advantage." Complaint at ¶ 21.

h. Envyscapes terminated Brunson's employment in mid-December 2019.

i. Brunson was thereafter hired by Backyard Greens.

j. Cecil Read allegedly hired Brunson "with intent that he would disclose Envyscapes'

      trade secrets." *Id.* at ¶ 27.

   k. Envyscapes alleges that it was the "only company that used these formulas, patterns, methods, techniques and processes for design and installation of indoor synthetic turf." *Id.* at ¶ 33.

   l. Envyscapes alleges that "[Backyard Greens] misappropriated Envyscapes' trade secrets as to its indoor installation to complete approximately 100 projects between December 2019 and the present." *Id.* at ¶ 35.

   m. Envyscapes alleges in detail, how trade secrets were misappropriated relating to "finishing methods," (*id.* at ¶¶ 38-46), "bunkers," (*id.* at ¶¶ 47-56), "infill," (*id.* at ¶¶ 57-66), and "seams" (*id.* at ¶¶ 67-75).

   n. Envyscapes alleges that that Defendants were "using" the trade secrets. *Id.* at ¶¶ 27, 30, 32, 39, 41, 49, 51, 59, 62, and 68.

11. Envyscapes asserted three causes of action: (1) Breach of Contract; (2) Violation of the Utah Uniform Trade Secrets Act ("UTSA"); and (3) Injunctive Relief.

12. Regarding the Breach of Contract claim, Envyscapes alleges that "Brunson breached the Agreement when he went to work for Read and disclosed Envyscapes' confidential trade secrets to Read, which Read used and continues to use."

13. On the UTSA claim, Envyscapes alleges "Defendants' disclosure and use of these trade secrets constitute misappropriation of Envyscapes' trade secrets under the UTSA."

14. In the claim for injunctive relief, Envyscapes alleges "Defendants used and relied on Envyscapes' trade secrets and confidential information in the design and build of approximately 100 projects between December 2019 and the present."

## NGM POLICY

15.     NGM issued policy no. MPP4590M, Form BPM P 2 (12-07), for the term of March 11, 2019 to March 11, 2020, providing $1,000,000.00 per occurrence in liability coverage (the "Policy").

16.     A true and correct copy of the Policy is attached hereto as Exhibit 2.

17.     The named insured under the Policy is RC Management LLC DBA – Backyard Greens LLC.

18.     The Policy also states "If you are designated in the Declarations as: … A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers."

19.     The Policy also includes as an insured, the following: "'employees', other than either your 'executive officers' (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business."

20.     The Policy contains the following provisions:

**Section II – Liability**

Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Form the words "you" and "your" refer to the Named Insured shown in the Declarations.  The words "we", "us" and "our" refer to the Company providing this insurance.

In Section **II** - Liability, the word "insured" means any person or organization qualifying as such under Paragraph **C**. Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to I --Paragraph F. Liability And Medical Expenses Definitions in Section **II** - Liability.

**A.   Coverages**

    **1.   Business Liability**

        **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for bodily injury", "property damage," "personal and advertising injury", to which this insurance does not apply. We may at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

            (1)    The amount we will pay for damages is limited as described in Paragraph D. – Liability And Medical Expenses Limits Of Insurance in Section II – Liability; and

            (2)    Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements or medical expenses.

        No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Paragraph f. Coverage Extension – Supplementary Payments.

        **b.**    This insurance applies:

            …

            (2)    To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

\*\*\*

**B.   Exclusions**

    **1.   Applicable To Business Liability Coverage**

        This insurance does not apply to:

…

**p.    Personal And Advertising Injury**

"Personal and advertising injury":

(1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

…

(5) Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

…

(12) Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

\*\*\*

**F.    Liability And Medical Expenses Definitions**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

    a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

    b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters.

    …

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    a. False arrest, detention or imprisonment;

    b. Malicious prosecution;

    c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

  **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

  **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

  **f.** The use of another's advertising idea in your "advertisement"; or

  **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**FIRST CAUSE OF ACTION (No Coverage)**

21. NGM incorporates herein by reference the allegations in paragraphs 1-20.

22. There is an actual controversy between NGM and all defendants regarding whether the Policy provides coverage for the claims asserted in the Envyscapes Suit.

23. The Envyscapes Suit does not seek damages for bodily injury or property damage.

24. Under the Policy, an advertising injury includes one or more of the following offenses: "a. False arrest, detention or imprisonment; b. Malicious prosecution; c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor; d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; e. Oral or written publication, in any manner, of material that violates a person's right of privacy; f. The use of another's advertising idea in your "advertisement"; or g. Infringing upon another's copyright, trade dress or slogan in your "advertisement"."

25. The Envyscapes Suit did not allege false arrest, detention of imprisonment.

26. The Envyscapes Suit did not allege malicious prosecution.

27. The Envyscapes Suit did not allege wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor.

28. The Envyscapes Suit did not allege an oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services.

29. The Envyscapes Suit did not allege the use of an advertising idea in Defendants' "advertisement."

30. The Envyscapes Suit did not allege the infringement of copyright, trade dress or slogan in Defendants' "advertisement."

31. The Envyscapes Suit did allege that Defendants misappropriated the trade secrets of Envyscapes.

32. The Envyscapes Suit did allege that Defendant used the misappropriated trade secrets in over one hundred products.

33. The Envyscapes Suit does not even contain the words "advertisement" or "advertising."

34. The Policy defines "Advertisement" as "a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters."

35. Pursuant to 28 U.S.C §2201(a) and Rule 57 of the Federal Rules of Civil Procedure, NGM is entitled to declaratory judgment that the claims asserted in the Envyscapes Suit are not covered under the Policy, and that NGM owes no duty to defend or indemnify Defendants against

such claims.

### SECOND CAUSE OF ACTION (The Policy Exclusions Prevent Coverage)

36. NGM incorporates herein by reference the allegations in paragraphs 1-35.

37. There is an actual controversy between NGM and all Defendants regarding whether the claims alleged in the Envyscapes Suit are excluded from coverage.

38. The Policy excludes, among other things, the following from coverage: Personal and Advertising Injury, (1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury"; (5) Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement"; and (12) Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

39. Brunson signed the confidentiality agreement identified in the Envyscapes Suit.

40. Envyscapes alleges that Brunson breached the confidentiality agreement.

41. The Envyscapes Suit does not allege that Defendants infringed on Envyscapes' copyright.

42. The Envyscapes Suit does not allege that Defendants infringed on Envyscapes' trade dress.

43. The Envyscapes Suit does not allege that Defendants infringed on Envyscapes's slogan.

44. The Envyscapes Suit does not even allege the words "copyright," "trade dress" or "slogan."

45. The Envyscapes Suit does allege that Defendants misappropriated Envyscapes's trade secrets.

46. Pursuant to 28 U.S.C §2201(a) and Rule 57 of the Federal Rules of Civil Procedure, NGM is entitled to declaratory judgment that the Policy exclusions preclude coverage for the claims asserted in the Envyscapes Suit, and that NGM owes no duty to defend or indemnify Defendants in the Envyscapes Suit.

### THIRD CAUSE OF ACTION (No Coverage for Exemplary and Punitive Damages)

47. NGM incorporates herein by reference the allegations in paragraphs 1-46.

48. There is an actual controversy between NGM and all defendants regarding whether the Policy provides coverage for exemplary and punitive damages sought in the Envyscapes Suit.

49. Utah Code Ann. § 31A-20-101(4) provides that no insurer may insure against punitive damages.

50. Pursuant to 28 U.S.C §2201(a) and Rule 57 of the Federal Rules of Civil Procedure, NGM is entitled to declaratory judgment that claims for exemplary and punitive damages asserted in the Envyscapes Suit are not covered under the Policy.

### PRAYER FOR RELIEF

WHEREFORE, NGM prays for the following relief:

1. On the first cause of action, for declaratory judgment that the claims asserted against Defendants in the Envyscapes Suit are not covered under the Policy, and that NGM owes not duty to defend or indemnify Defendants against such claims.

2. On the second cause of action, that Policy exclusions preclude coverage for the claims asserted in the Envyscapes Suit, and that NGM owes no duty to defend or indemnify

Defendants in the Envyscapes Suit.

3. On the third cause of action, for declaratory judgment that claims for exemplary and punitive damages asserted in the Envyscapes Suit are not covered under the Policy.

4. For an award of NGM's costs and such other and further relief as is just, proper and provided for by law.

DATED this 19th day of March 2021.

BLACKBURN & STOLL, LC

/S/ Brett N. Anderson
Brett N. Anderson
Attorneys for Plaintiff
NGM Insurance Company